

IN THE

# Court of Appeals of Indiana

Akeenen A. Hunt,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

August 7, 2026

Court of Appeals Case No.
24A-CR-2415

Appeal from the Hancock Circuit Court

The Honorable Scott Sirk, Judge

Trial Court Cause No.
30C01-2402-F5-000196

**Opinion by Judge Felix**
Chief Judge Tavitas and Judge Bradford concur.

**Felix, Judge.**

## Statement of the Case

[1] Akeenen Hunt repeatedly called A.R. from jail—despite knowing of two separate no contact orders prohibiting such conduct—to attempt to influence her testimony in his pending criminal case. Hunt was found guilty of multiple counts of attempted obstruction of justice, invasion of privacy, and attempted invasion of privacy, and he was sentenced to 35 years of incarceration. Hunt now appeals and raises nine issues for our review, which we revise and restate as the following five issues:

1. Whether Hunt's Indiana Criminal Rule 4(B) 70-day period expired before he was brought to trial;
2. Whether the State violated Hunt's due process rights by improperly labeling Count 93 in the charging information;
3. Whether the State presented sufficient evidence to support Hunt's attempted obstruction of justice convictions;
4. Whether the trial court abused its discretion in sentencing Hunt; and
5. Whether Hunt's sentence is inappropriate under Indiana Appellate Rule 7(B).

[2] We affirm.

## Facts and Procedural History

[3] This appeal concerns the overlap of three of Hunt's criminal causes, all involving A.R. as a victim: Cause 29D03-2306-F6-004386 (the "Domestic Violence Cause"), Cause 30C01-2312-F2-002169 (the "Rape Cause"), and this cause, Cause 30C01-2402-F5-000196 (the "Attempted Obstruction Cause"). At

his initial hearing in both the Domestic Violence and Rape Causes, both trial courts advised Hunt "that a No Contact Order was granted with [A.R.] as the protected person," and Hunt indicated that he received and understood the orders. Tr. Vol. IV at 247. Hunt was later convicted in the Domestic Violence Cause and did not appeal. Then, in December 2023, less than one year after Hunt was sentenced in the Domestic Violence Cause, he committed the offenses in the Rape Cause, which included invasion of privacy, domestic battery, kidnapping, and rape. Hunt was later convicted of 15 of the 17 offenses charged in the Rape Cause, and we affirmed his convictions on appeal. *Hunt v. State*, 269 N.E.3d 1223, 1232 (Ind. Ct. App.), *trans. denied*, 272 N.E.3d 966 (Ind. 2025).

[4] While Hunt was being held in the Hancock County Jail pending trial in the Rape Cause, Hunt called A.R. more than 100 times between December 24, 2023, and January 3, 2024. Based on those phone calls, the State charged Hunt with 106 counts in the Attempted Obstruction Cause, which included 4 counts of attempted obstruction of justice as Level 5 felonies,[1] 15 counts of invasion of privacy as Class A misdemeanors,[2] and 87 counts of attempted invasion of privacy as Class A misdemeanors[3]. A jury found Hunt guilty as charged, and the trial court sentenced him to 35 years of incarceration. This appeal ensued.

---

[1] Ind. Code §§ 35-44.1-2-2(b)(1), 35-41-5-1.

[2] I.C. § 35-46-1-15.1(a)(5).

[3] I.C. §§ 35-46-1-15.1(a)(5), 35-41-5-1.

## Discussion and Decision

### 1. Hunt's 70-Day Period Did Not Expire Before He Was Brought to Trial

On March 25, 2024, at Hunt's initial hearing in the Attempted Obstruction Cause, the trial court appointed Hunt's defense attorney in the Rape Cause to represent him in the Attempted Obstruction Cause. At the end of the hearing, the following colloquy took place:

> MR. HUNT: [E]arlier . . . when you were . . . introducing my rights[,] you said I have a right to a fast and speedy correct?
>
> THE COURT: You're . . . set within that timeframe already[,] it's May 21st.
>
> MR. HUNT: So it . . . starts right now[,] is . . . that what you're telling me? The fast and speedy is (inaudible)[.]
>
> THE COURT: Yes you're within the timeframe[,] it's already set within that timeframe.
>
> MR. HUNT: Okay. So that's not something I –
>
> THE COURT: All right. I'll tell you those questions are questions you need to ask your attorney. . . .

Tr. Vol. II at 22.

At a May 30 pretrial hearing, Hunt argued that the March 25 colloquy (the "March 25 Exchange") was Hunt's motion for an early trial and the start of the

70-day clock under Criminal Rule 4(B). The trial court ruled that "there was no valid speedy trial request made," Tr. Vol. II at 44, because (1) it was a "pro se motion made by a represented litigant," (2) counsel did not join in the motion, and (3) "the Court directed [Hunt] to speak with his attorney about his request," Appellant's App. Vol. II at 163. The trial court further explained that on April 1, Hunt pro se filed handwritten requests for "an Early Trial" in both the Rape and Attempted Obstruction Causes (the "April 1 Request"), which the trial court denied the following day. *Id.* However, through a clerical error, the motions and order denying the motions were only filed in the Rape Cause. On July 2, Hunt requested an early trial through counsel in the Attempted Obstruction Cause, and the trial court granted that motion.

[7] Hunt claims the trial court erred by finding that the March 25 Exchange was invalid. We review a trial court's Criminal Rule 4 decision de novo "[w]hen the issue involves 'a question of law applied to undisputed facts,'" *Bradley v. State*, 248 N.E.3d 563, 567 (Ind. 2024) (quoting *Austin v. State*, 997 N.E.2d 1027, 1039 (Ind. 2013)), and for clear error "[w]hen the trial court makes factual findings (of congestion or emergency to justify a deadline extension)," *id.* (quoting *Austin*, 997 N.E.2d at 1040). We "show 'reasonable deference'" to the trial court's findings. *Id.* (quoting *Austin*, 997 N.E.2d at 1040).

[8] Criminal Rule 4 ("C.R. 4") was adopted to implement a defendant's constitutional right to a speedy trial; it was not adopted to "create a mechanism to avoid trial." *Bradley*, 248 N.E.3d at 573 (quoting *Brown v. State*, 725 N.E.2d 823, 825 (Ind. 2000)). C.R. 4(B) provides that, subject to certain exceptions,

when an incarcerated defendant "move[s] for an early trial," the trial must commence no later than 70 days after the request. An incarcerated defendant can trigger C.R. 4(B) at any stage of his criminal prosecution, so the 70-day clock does not begin to run until the incarcerated defendant makes the necessary motion. *Watson v. State*, 155 N.E.3d 608, 615–16 (Ind. 2020). "If a defendant is held beyond the time limit of this section and moves for dismissal, the criminal charge against the defendant must be dismissed." C.R. 4(B).

[9] Hunt specifically argues that the March 25 Exchange was a valid motion for an early trial, and because he was tried more than 70 days after that motion, he is entitled to have his convictions vacated. The Indiana Supreme Court has clarified the trial court's responsibilities when a defendant makes a pro se motion for an early trial:

> [O]nce counsel has been appointed, even if counsel has not yet entered an appearance, a defendant speaks to the court through counsel. When a defendant files a pro se motion after counsel has been appointed to represent him, such as [a] request for an early trial under Indiana Criminal Rule 4(B), the trial court is not required to consider the defendant's pro se request. . . . Before counsel's appointment, a trial court must consider a defendant's pro se motion, like a request for an early trial. After counsel's appointment, this consideration is left to the trial court's discretion.

*Anderson v. State*, 160 N.E.3d 1102, 1102 (Ind. 2021) (per curiam) (mem.) (citing *Underwood v. State*, 722 N.E.2d 828, 832 (Ind. 2000)). Additionally, a subsequent "request for a speedy trial is an abandonment" of prior requests.

*Hahn v. State*, 67 N.E.3d 1071, 1081 (Ind. Ct. App. 2016) (citing *Minneman v. State*, 441 N.E.2d 673, 677 (Ind. 1982)).

[10] Here, assuming arguendo that the March 25 Exchange was actually a request for an early trial and not just a request for information,[4] Hunt subsequently filed the April 1 Request, which results in abandonment of the March 25 Exchange, *see Hahn*, 67 N.E.3d at 1081 (citing *Minneman*, 441 N.E.2d at 677). As Hunt acknowledges, the trial court was "free to disregard" the "pro se request for a speedy trial [made] after the initial hearing." Appellant's Reply Br. at 4. Indeed, the trial court denied the April 1 Request because it was "improperly made (without Counsel for Defendant joining in the motion and filing the same)." Appellant's App. Vol. II at 163. The trial court did not err by denying the April 1 Request because counsel had been appointed before it was made, *see Anderson*, 160 N.E.3d at 1102 (citing *Underwood*, 722 N.E.2d at 832). Furthermore, Hunt made a subsequent early trial request through counsel on July 2, which would have been an abandonment of the April 1 Request if it had been valid, and his trial commenced on August 20. Accordingly, Hunt's 70-day period did not expire before he was brought to trial.[5]

---

[4] Had the State requested we conclude the March 25 Exchange was merely a request for information, it is likely we would have agreed with that proposition, but since the State argues this issue on the merits, we will assume for purposes of this decision that the colloquy was actually a request to exercise Hunt's early trial rights pursuant to Criminal Rule 4(B).

[5] Additionally, even if the March 25 Exchange or April 1 Request had been valid requests for an early trial, Hunt waived this issue for review by failing to make a motion for discharge or dismissal prior to trial. *See* Ind. Crim. Rule 4(B) (emphasis added) ("If a defendant is held beyond the time limit of this section *and moves for dismissal*, the criminal charge against the defendant must be dismissed."); *see also Parker v. State*, 965

## 2. Hunt Has Waived Appellate Review of His Due Process Claim

[11]     Hunt next argues that the State violated his due process rights by failing to give him sufficient notice that it was charging him with a Level 5 felony in Count 93. Hunt did not raise any such argument to the trial court, so his claim can only be analyzed under the fundamental error doctrine. *See Halliburton v. State*, 1 N.E.3d 670, 678 (Ind. 2013) (quoting *Treadway v. State*, 924 N.E.2d 621, 633 (Ind. 2010)) ("Failure to object at trial waives the issue for review unless fundamental error occurred."). However, Hunt does not address his due process claim under the fundamental error doctrine, so he has waived it for our review. *See Terpstra v. State*, 138 N.E.3d 278, 286 (Ind. Ct. App. 2019) (concluding the defendant waived his right to appeal because he "never raised a due process objection at trial, and . . . does not argue that the alleged violations of his due process rights constituted fundamental error"), *trans. denied*.

[12]     Waiver notwithstanding, Hunt's argument is without merit. Hunt claims that his conviction for Count 93 cannot stand because that count is labeled as a Class A misdemeanor in the charging information, and "[t]here is nothing in the charging information indicating that count 93 was charged as a Level 5 felony." Appellant's Am. Br. at 30. To the contrary, the Indiana Code citations included in that count are "I.C. 35-44.1-2-2(b)(1) and I.C. 35-41-5-1"—the sections for obstruction of justice as a Level 5 felony and attempt.

N.E.2d 50, 52 (Ind. Ct. App. 2012) (citing *Hampton v. State*, 754 N.E.2d 1037, 1039 (Ind. Ct. App. 2001), *trans. denied*), *trans. denied*.

Appellant's App. Vol. II at 210. Additionally, the narrative description of the count tracks the language of the obstruction statute and the enhancing allegations that increase obstruction of justice from a Level 6 felony to a Level 5 felony (e.g., when a person, during the investigation or pendency of a domestic violence case, offers promises or benefits, threatens, or unlawfully influences any witness from providing truthful testimony). *See id.*; *see also* Ind. Code § 35-44.1-2-2(a), (b). Accordingly, despite the incorrect label of the offense level,[6] Hunt received adequate notice of the charge. *See Wilhoite v. State*, 7 N.E.3d 350 (Ind. Ct. App. 2014) ("Errors in the information are fatal only if they mislead the defendant or fail to give him notice of the charge filed against him.").

### 3. The State Presented Sufficient Evidence to Support Hunt's Convictions

[13] Hunt contends that the State presented insufficient evidence at trial to support his convictions for attempted obstruction of justice as Level 5 felonies. Our standard of review for such a claim is as follows:

> "A conviction is supported by sufficient evidence if 'there is substantial evidence of probative value supporting each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.'" *Hancz-Barron v. State*, 235 N.E.3d 1237, 1244 (Ind. 2024) (quoting *Willis v. State*, 27 N.E.3d 1065, 1066 (Ind. 2015)). This Court reviews

---

[6] Our legislature has not created an obstruction of justice offense that is only a Class A misdemeanor. The base offense begins as a Level 6 felony and can be increased to a Level 5 felony depending on special circumstances. *See* I.C. § 35-44.1-2-2; *see also* Appellant's Am. Br. at 31 (acknowledging that there "is no offense of obstruction of justice as a [C]lass A misdemeanor").

> only the evidence most favorable to the verdict and the reasonable inferences therefrom, and will reverse only where it is shown that "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." [*Teising v. State*, 226 N.E.3d 780, 783 (Ind. 2024)].

*Konkle v. State*, 253 N.E.3d 1068, 1090–91 (Ind. 2025). We do not reweigh the evidence or reassess witness credibility. *Id.* at 1090 (quoting *Teising*, 226 N.E.3d at 783).

[14]   In order to convict Hunt of attempted obstruction of justice as charged, the State had to prove beyond a reasonable doubt that Hunt (1) took a substantial step toward (2) knowingly or intentionally (3) during the pendency of a domestic violence case (4) *either* offering, giving, or promising any benefit to A.R. *or* intimidating, unlawfully influencing or unlawfully persuading A.R. to (5) abstain from attending or giving testimony, *or* give a false or materially misleading statement. *See* I.C. § 35-44.1-2-2(b)(1), (3); Appellant's App. Vol. II at 209–11. Hunt challenges all four of his convictions for attempted obstruction of justice (collectively, the "Attempted Obstruction Convictions").[7] We address each conviction in turn.[8]

---

[7] Hunt does not challenge any of his other convictions.

[8] Hunt argues that for Counts 89, 92, and 93, the State failed to prove the coercion element found in Indiana Code § 35-44.1-2-2(a)(1). In making this argument, Hunt assumes that Subsection (a) is the base offense for Subsection (b). There is an apparent split among panels of this court on whether this reading of Indiana Code section 35-44.1-2-2 is proper. *See*, *e.g.*, *Scott v. State*, 139 N.E.3d 1148 (Ind. Ct. App. 2020) (assuming Subsection (a) is the base offense for Subsection (b)), *trans. denied*; *Fowler v. State*, 279 N.E.3d 384 (Ind. Ct. App. 2026) (addressing Subsection (b) without acknowledging Subsection (a)). We need not resolve that split here. Instead, we note that in the Charging Information, the State did not specifically allege coercion as used

*Count 89*

At approximately 5:38 p.m. on December 24, 2023, Hunt called A.R. from the Hancock County Jail. During that phone call, Hunt complained to A.R. about the statement she made to law enforcement officers, saying, "Your statement gave them . . . probable cause to keep me in here." State's Ex. 185A at 09:25–09:30. Hunt then told A.R. that if she changed her statement in a deposition or missed a deposition, the charges in the Rape Cause would be dismissed. Otherwise, Hunt would remain in jail, and they would not be able to be together. During that same call, A.R. talked about how Hunt "destroyed" her, *id.* at 13:00–13:04, and Hunt talked about doing better and "getting through this sh[*]t," *id.* at 12:40–12:43. After that call ended, Hunt called A.R. back and told her, "If you want me to stay in this bitch for five months, you know what I'm saying, let me stay in this bitch for 5 months. But do not do that to me. . . . And . . . there's some sh[*]t I might deserve. . . . So . . . let this be my punishment." State's Ex. 186 at 01:39–02:00.

For Count 89, the State alleged that on or about December 24, Hunt committed attempted obstruction of justice by "calling [A.R.] and telling her to provide three separate statements[9] at a deposition that differ[ed] from her original

---

in Subsection (a). Specifically, in Counts 89, 92, and 93, the State cited Indiana Code section 35-44.1-2-2(b) and alleged that Hunt "knowingly or intentionally attempt[ed] to intimidate, unlawfully influence, or unlawfully persuade" or "offer, give, or promise any benefit to" A.R. to give a false statement. Appellant's App. Vol. II at 226–27. Accordingly, we do not address the parties' appellate arguments concerning the coercion element.

[9] Hunt does not challenge the number of statements on appeal, so we do not address it on review.

statement to law enforcement." Appellant's App. Vol. II at 226. Hunt argues that there is no evidence that A.R.'s statement to law enforcement was true, so there is no evidence that he asked her to make a false or materially misleading statement.

[17] Here, the probative evidence and reasonable inferences supporting the verdict show that (1) A.R. made a statement to law enforcement that gave them probable cause to believe Hunt committed a crime; (2) During the December 24 phone calls, Hunt did not say that A.R.'s statement to law enforcement was untruthful—nor did he ask her to simply tell the truth when he asked her to change her statement; (3) Hunt admitted that he deserved punishment after A.R. asserted that he had "destroyed" her, State's Ex. 185A at 13:00–13:04; (4) Hunt asked A.R. to change her statement that gave law enforcement probable cause so that the charges would be dismissed; and (5) Hunt testified at trial that the no contact order was from a "domestic situation" that he has "apologized multiple times for," Tr. Vol. III at 92. Notably, A.R. was not called as a witness to testify before the jury. From this evidence, the jury could have reasonably inferred that A.R.'s statement to law enforcement was true and that Hunt was attempting to influence her to provide a false statement so that he would be released from jail.

### Count 92

[18] On December 28, 2023, Hunt called A.R. 12 times. When they spoke, Hunt asked A.R. about a statement she made to law enforcement about the events giving rise to the Rape Cause, namely, (1) about Hunt not knowing where she

lived and (2) A.R. not knowing how Hunt got her address.  A.R. responded by saying, "Exactly.  Because she don't.  That's the truth.  That's the f[*]cking truth."[10]  State's Ex. 188 at 10:33–10:40.  Hunt asked why she would make that statement, and why she did not just tell the officer that "she invited [Hunt] over there," *id.* at 11:15–11:18.  A.R. responded by referencing the camera footage and saying it did not look like she willingly went with him.  Hunt proceeded to narrate an alternative version of the events of that night, to which A.R. responded, "[N]othing of what you're saying would make sense.  . . .  [T]he night was drastic as f[*]ck.  Irrational decisions were made in that moment because of anger," *id.* at 13:43–13:56.  Hunt countered by pleading with her to make "another statement."  *Id.* at 13:59–14:03.  A.R. agreed to change her statement about what happened inside the house, but she refused to change her statement about what happened before that because "everything from the house could be blurred," State's Ex. 189A at 00:46–00:50.  Hunt and A.R. then discussed video footage that was evidence in the Rape Cause, and A.R. again said that Hunt's version of the events did not "make sense," *id.* at 10:00–10:01, and "some of the story would need to be told," *id.* at 10:18–10:22.  Hunt acknowledged the video footage showed what happened with their cars,[11] so they could not alter A.R.'s statement on that topic.

---

[10] Hunt and A.R. often used code names or referred to themselves in the third person to hinder law enforcement attempts to decipher their communications.

[11] Although the video footage is not a part of the record in this case, we have previously described what happened with Hunt's and A.R.'s vehicles.  Specifically, A.R. attempted to flee in her vehicle after Hunt kicked in her front door, and "Hunt followed A.R. in his vehicle and proceeded to ram his vehicle into A.R.'s

[19] During one of the phone calls, A.R. told Hunt that he only cared about himself and his criminal charges, and not how his actions made her feel. A.R. pointed out that Hunt felt betrayed by her statement to law enforcement, but he was not considering what she went through that night because he thought it was "so small." State's Ex. 190 at 06:08–06:10. Hunt responded, "Based on what I've been seeing on the news, it is small. . . . Motherf[*]ckers arguing with their girlfriend . . . and shooting they bitch in the head. Yes, n[****] this is small . . . compared to what people are doing in the world." *Id.* at 06:13–06:37.

[20] Later that day, Hunt called A.R. asking her to promise not to "fold." State's Ex. 191 at 02:16–02:19. Later still, Hunt called A.R. again saying, "I need you to follow my lead here," State's Ex. 192 at 01:16–01:19, and A.R. replied, "Some stuff you need to rethink. Rethink the line," *id.* at 03:42–03:48. When Hunt asked her to say she invited him to her house, A.R. countered, "How was my door broke?" *Id.* at 04:15–04:17. After asking if he and A.R. were "in this together," *id.* at 06:33–06:35, Hunt told A.R., "I love you more than you think I love you. . . . When I get out of this, you the only person . . . that I plan on focusing on," *id.* at 07:19–07:32. A.R. told Hunt they could "get on the same boat," *id*. at 08:43–08:47, "if it ma[de] sense," *id.* at 08:56–08:58.

---

Jeep 'several times in several different locations,' with sufficient force to deploy his air bags." *Hunt v. State*, 269 N.E.3d 1223, 1226 (Ind. Ct. App.), *trans. denied*, 272 N.E.3d 966 (Ind. 2025). Once A.R.'s Jeep was disabled, A.R. got out and ran, but Hunt followed A.R. and hit her before walking her back to her home. *Id.*

For Count 92, the State alleged that on or about December 28, Hunt committed attempted obstruction of justice "by speaking with [A.R.] about changing the details of her statement." Appellant's App. Vol. II at 226. Hunt makes the same arguments as to Count 92 as he did to Count 89. Hunt again argues that there is no evidence that A.R.'s statement to law enforcement officers was true, so there is no evidence that he asked her to make a false or materially misleading statement.

Here, the probative evidence and reasonable inferences supporting the verdict show that (1) A.R. made a statement to law enforcement about not knowing how Hunt discovered her address; (2) when Hunt asked why A.R. made that statement, she said it was because it was the "truth," State's Ex. 188 at 10:33–10:40; (3) Hunt asked A.R. to change her statement to say she invited him over; (4) A.R. indicated that she would only change her statement if the story made sense and there was not video footage conflicting with Hunt's supplied narrative—in other words, Hunt's acts not caught on camera "could be blurred," State's Ex. 189A at 00:46–00:50; and (5) Hunt told A.R. that if he got out of jail, she would be the only person that he planned to "focus[] on," State's Ex. 192 at 07:19–07:32. The jury could have reasonably inferred that A.R.'s statement to law enforcement was true and that Hunt was attempting to

unlawfully persuade her to provide a false statement so that he would be released from jail.[12]

### Count 93

Between December 29 and 30, Hunt called A.R. 31 times. When they spoke, Hunt told A.R. that he would "get [her] rent paid off . . . when [he] g[o]t out." State's Ex. 193 at 03:29–03:35. Hunt later asked, "Can we get married after all this sh[*]t is over with?" State's Ex. 196 at 06:26–06:29. Hunt continued, encouraging her to "accept [his] . . . offer of loyalty, love, respect, and a peace treaty." *Id.* at 09:05–09:24. After talking about how Hunt should have left A.R.'s home "that night" after realizing she did not want to see him, State's Ex. 198A at 09:29–09:32, A.R. explained how she was feeling when she gave her report to law enforcement. A.R. then told Hunt she did not want to talk about "that night" or hear Hunt's "fake-[*]ss apologies." *Id.* at 11:53–11:59. Hunt interrupted, telling her to "just follow [his] lead," *id.* at 12:17–12:20, and later told her he was "trying to get out of this situation," State's Ex. 199A at 1:41–1:45. In another phone call, Hunt thanked A.R. for "helping [him] out with everything," State's Ex. 201A at 01:33–01:35, and expressed his desire to "get out" of jail before the end of February, *id.* at 01:40–01:44. A.R. explained that although Hunt did not deserve to have it and "d[id]n't have the right to ask," *id.*

---

[12] Hunt also argues that "there is no evidence that [he] asked A.R. to refrain from giving testimony or a statement." Appellant's Am. Br. at 39. We need not address this argument because Indiana Code section 35-44.1-2-2(b) is written in the disjunctive and we have already concluded that the State presented sufficient evidence to prove Hunt attempted to unlawfully persuade A.R. to give a false statement.

at 02:16–02:23, she would speak with Hunt's attorney about the "sh[*]t that's overcharged." *Id.* at 07:59–08:01. Hunt responded, asking, "[S]o you . . . want me to leave with some type of charge?" *Id.* at 08:06–08:09. A.R. explained again that some of the charges in the Rape Cause were caught on camera, but she would "speak on" things not caught on camera. *Id.* at 08:16–08:24.

[24] For Count 93, the State alleged that "on or between December 29, 2023 and December 30, 2023," Hunt committed attempted obstruction of justice "by speaking with [A.R.] about changing her statement and telling her he would pay her rent." Appellant's App. Vol. II at 226–27. Hunt again argues that there is no evidence that A.R.'s statement to law enforcement was true, so there is no evidence that he asked her to make a false or materially misleading statement.

[25] Here, the probative evidence and reasonable inferences supporting the verdict show that (1) A.R. made a statement to law enforcement about "that night," State's Ex. 198A at 09:29–09:32; (2) Hunt asked A.R. to change her statement to conform with his narrative so he could escape punishment; (3) A.R. did not want to see Hunt "that night," *id.*, but he went to her home anyway; (4) some of Hunt's conduct was caught on camera, so A.R. refused to change her statement about that conduct; and (5) Hunt offered to marry A.R. and help her pay her rent if he were released from jail. The jury could have reasonably inferred that A.R.'s statement to law enforcement was true, that Hunt was attempting to unlawfully influence her to provide a false statement by promising a benefit so that he would be released from jail.

### *Count 106*

[26]     On January 3, 2024, Hunt called A.R. ten times.  Tr. Vol. IV at 245–46.  In one call, Hunt said, "I don't mean to sound like an [*]sshole when I say this . . . but I was just . . . wondering if you was with me."  State's Ex. 214A at 02:03–02:16.  After A.R. indicated she was, Hunt told her he had an attorney and that the State was adding additional charges for talking to her.  Hunt continued, asking A.R. to call his attorney to find out how to "exonerate all these charges," *id.* at 05:39–05:41.  In another call, Hunt told A.R. she could "go up to the . . . courthouse and fill out the paperwork to remove the no contact order" so his bail would be lowered.  State's Ex. 215 at 00:29–00:46.  Later in the call, Hunt talked about making a statement to his attorney and asked A.R. if she read it and if she would agree with what he said or make a "whole different statement," *id.* at 09:49–09:52.  A.R. indicated that her willingness to conform her statement to his "depend[ed]" on what Hunt said and whether it "ma[de] sense."  *Id.* at 09:54–09:57.

[27]     For Count 106, the State alleged that on or about January 3, Hunt committed attempted obstruction of justice "by speaking with [A.R.] about changing her statement and/or not coming to court, and/or speaking to law enforcement about dropping charges, and telling her he would pay for her vacation."  Appellant's App. Vol. II at 226–27.  Hunt again argues that there is no evidence that A.R.'s statement to law enforcement was true, so there is no evidence that he asked her to make a false or materially misleading statement; he also argues

the State failed to prove he asked her to "abstain from attending a proceeding," Appellant's Am. Br. at 44.

[28] Here, the probative evidence and reasonable inferences supporting the verdict show that (1) A.R. made a statement to law enforcement; (2) Hunt asked A.R. to change her statement to conform with his narrative so he could escape punishment; (3) A.R.'s willingness to change her statement depended on whether what Hunt told her to say "made sense," State's Ex. 215 at 09:54–09:57. The jury could have reasonably inferred that A.R.'s statement to law enforcement was true and that Hunt was attempting to influence her to provide a false statement so that he would be released from jail. The State was only required to prove *either* that Hunt attempted to make A.R. give a false statement *or* abstain from giving testimony. Because the evidence is sufficient to prove the former, we do not address Hunt's argument as to the latter. For the foregoing reasons, the State presented sufficient evidence to support the Attempted Obstruction Convictions.

### 4. The Trial Court Did Not Abuse Its Discretion in Sentencing Hunt

[29] Hunt contends that the trial court erred in sentencing him. We review a trial court's sentencing decision for an abuse of discretion. *Owen v. State*, 210 N.E.3d 256, 269 (Ind. 2023) (quoting *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *as amended* (July 10, 2007), *decision clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007)), *reh'g denied*. "An abuse of discretion occurs if the decision is 'clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.'" *Id.*

(quoting *Anglemyer*, 868 N.E.2d at 490).  "A court does not abuse its discretion if the record supports its reasons for imposing a sentence and those reasons are proper as a matter of law."  *Id.* (citing *Anglemyer*, 868 N.E.2d at 490–91).

[30]  Here, Hunt alleges the trial court abused its discretion by (a) identifying improper aggravating circumstances, and (b) imposing consecutive sentences. We address each allegation in turn.

### a.  Aggravating Circumstances

[31]  Hunt claims that the trial court abused its discretion by identifying improper aggravating circumstances.  The trial court's written sentencing statement, pertaining only to the Attempted Obstruction Convictions, included the following aggravating circumstances:

> 1.  The defendant committed significant harm to victim in each count[;]
>
> 2.  The Defendant repeatedly and blatantly violated a Protective order in each count[;]
>
> 3.  The Defendant had recently violated probation; and
>
> 4.  The Defendant has an extensive criminal history.

Appellant's 2d Suppl. App. Vol. II at 2.  Hunt challenges all four aggravators. We address each in turn.

[32]   As to the first, Hunt argues that there is no evidence that A.R. was harmed because Hunt merely called her, and she voluntarily answered his calls. We disagree. The evidence shows A.R. repeatedly tried expressing to Hunt how his actions "destroyed" her, State's Ex. 185A at 13:00–13:04, and she told him he did not deserve her help and never considered what she went through with him. Moreover, Hancock County Sheriff's Department Commander Bridget Foy testified at trial and described the power dynamic in a domestic violence relationship; specifically, that the victim becomes "powerless" and "dependen[t]" upon the abuser. Tr. Vol. II at 166. Viewed in this light, the communications supporting Hunt's convictions for the attempted obstruction charges demonstrate he harmed A.R. by seeking to "reestablish his control" of her life, *see Lane v. State*, 232 N.E.3d 119, 128 (Ind. 2024). For instance, Hunt told A.R. that his actions supporting his 15 convictions in the Rape Cause were "small" "compared to what [other] people are doing in the world" because he did not "shoot[]" her "in the head." State's Ex. 190 at 06:13–06:37. Accordingly, the trial court did not abuse its discretion by considering the harm to A.R. as an aggravating circumstance.

[33]   As to the second, Hunt argues that the trial court could not consider his repeated violations of a no contact order because those violations were elements "of most of the charged offenses." Appellant's Am. Br. at 46. We note again that the sentencing statement and aggravators identified therein only pertain to the Attempted Obstruction Convictions, and violation of a no contact order was not an element of those convictions. Even if that were not the case, a trial court

is permitted to consider the commission of "multiple crimes" as an aggravating circumstance. *McDonald v. State*, 868 N.E.2d 1111, 1114 (Ind. 2007). Here, Hunt was charged with and convicted of 106 criminal counts. Accordingly, the trial court did not abuse its discretion by considering this aggravating circumstance.

[34] As to the third, Hunt contends the record does not support the finding that he "recently violated probation" because he committed the offenses while incarcerated. Appellant's Am. Br. at 46. The presentence investigation report (the "PSI") in the Attempted Obstruction Cause referenced the PSI in the Rape Cause and indicated that, apart from the new offenses, there was "nothing new" to add. Appellant's App. Vol. III at 158. The PSI prepared in the Rape Cause reports that the Domestic Violence Cause offense was committed in June 2023 while Hunt was serving criminal probation in Indiana for an Illinois conviction. Appellant's Suppl. App. Vol. II at 59. Accordingly, the record supports this aggravator, and the trial court did not abuse its discretion by considering it.

[35] Finally, Hunt claims that the record does not support the finding that Hunt has an "extensive" criminal history. Appellant's Am. Br. at 46. More particularly, Hunt argues that the convictions in the Rape Cause cannot be considered as aggravating circumstances in the Attempted Obstruction Cause because the attempted obstruction of justice charges "were elevated to Level 5 felonies because they occurred 'during the investigation or pendency of a domestic violence . . . case.'" Appellant's Am. Br. at 47 (alteration in original) (quoting

I.C. § 35-44.1-2-2(b)). We disagree. As the State points out, a conviction is not the same thing as an investigation. The aggravating circumstance here was not that an investigation took place or that Hunt was accused of domestic violence; rather, it was that Hunt had numerous prior criminal convictions.

[36] Hunt's criminal history spans more than ten years. On July 19, 2024, Hunt was convicted of 15 criminal offenses in the Rape Cause, including invasion of privacy as a Class A misdemeanor, three counts of criminal recklessness with a deadly weapon as Level 6 felonies, three counts of domestic battery as Level 6 felonies, kidnapping as a Level 6 felony, two counts of attempted kidnapping while hijacking a vehicle as Level 2 felonies, and rape as a Level 3 felony. Even if we ignore the three domestic battery convictions in the Rape Cause, 12 convictions remain in that cause—2 misdemeanors and 10 felonies. Apart from the Rape Cause convictions, Hunt has six prior unrelated convictions dating back to 2010—two felonies and four misdemeanors. Accordingly, the record supports this aggravator, and the trial court did not abuse its discretion by considering it.

### b. Consecutive Sentences

[37] Hunt claims the trial court abused its discretion by ordering consecutive sentences for the Attempted Obstruction Convictions. Specifically, Hunt argues that the Attempted Obstruction Convictions "arose out of a single episode," Appellant's Am. Br. at 49, so his sentence on those convictions "must be reduced to 7 years," *id.* at 52 (citing I.C. § 35-50-1-2(d)(2)).

[38]    "Generally, 'it is within the trial court's discretion whether to order sentences be served concurrently or consecutively.'" *Fix v. State*, 186 N.E.3d 1134, 1143 (Ind. 2022) (quoting *Myers v. State*, 27 N.E.3d 1069, 1082 (Ind. 2015)).  This discretion is not without limits.  *See id.* (citing *Pritscher v. State*, 675 N.E.2d 727, 729 (Ind. Ct. App. 1996)).  Indiana Code section 35-50-1-2(d)[13] provides in relevant part that "the total of the consecutive terms of imprisonment to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct may not exceed" certain prescribed caps.

[39]    An "episode of criminal conduct" refers to "offenses or a connected series of offenses that are closely related in time, place, and circumstance."  I.C. § 35-50-1-2(b).  "Whether certain offenses constitute a single episode of criminal conduct is a fact-intensive inquiry determined by the trial court."  *Fix*, 186 N.E.3d at 1144 (internal quotation marks omitted) (quoting *Schlichter v. State*, 779 N.E.2d 1155, 1157 (Ind. 2002)).  "While the ability to recount each charge without referring to the other offers guidance on the question of whether a defendant's conduct constitutes an episode of criminal conduct, we focus our analysis on the timing of the offenses and the simultaneous and contemporaneous nature of the crimes, if any."  *Id.* (internal quotation marks omitted) (quoting *Reed v. State*, 856 N.E.2d 1189, 1200 (Ind. 2006)).

---

[13] Indiana Code section 35-50-1-2 has been amended several times recently.  Although we base our decision on the version in effect between July 1, 2020, and June 30, 2025, we do not include an effective date parenthetical after any reference to this section for clarity and concision.

[40]     The facts here show that on December 24, Hunt committed attempted obstruction of justice as a Level 5 felony when he contacted A.R., requesting that she change her statement so that they could be together; on December 28, Hunt committed attempted obstruction of justice as a Level 5 felony when he contacted A.R., requesting that she change her statement in exchange for his love and attention; on December 29 and 30, Hunt committed attempted obstruction of justice as a Level 5 felony when he contacted A.R., requesting that she change her statement in exchange for his marrying her; and on January 3, Hunt committed attempted obstruction of justice as a Level 5 felony when he contacted A.R., requesting that she change her statement to get the no contact order dropped. Although Hunt placed all the phone calls to A.R. from the same location, he did not commit any of these offenses at the same time. And it is not difficult to account for one of these offenses without referring to details of the others. *See Fix*, 186 N.E.3d at 1144 (quoting *O'Connell v. State*, 742 N.E.2d 943, 951 (Ind. 2001)). To be sure, all of Hunt's offenses included A.R. as the victim and referenced the Rape Cause, but there is nothing simultaneous or contemporaneous about the nature of the offenses. We therefore cannot say these four offenses constitute a single episode of criminal conduct such that the sentencing caps in Indiana Code section 35-50-1-2(d) apply. Accordingly, the trial court did not abuse its discretion by ordering Hunt to serve consecutively his sentences on the Attempted Obstruction Convictions.

### 5. Hunt's Sentence Is Not Inappropriate under Appellate Rule 7(B)

Finally, Hunt argues his sentence is inappropriate under Appellate Rule 7(B) and should be revised. The Indiana Constitution authorizes us to independently review and revise a trial court's sentencing decision. *Tillett v. State*, 278 N.E.3d 359, 366 (Ind. 2026) (citing Ind. Const. art. 7, §§ 4, 6). That authority is implemented through Appellate Rule 7(B), which permits us to revise a sentence if, "after due consideration of the trial court's decision," we conclude "that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Id.* (quoting Ind. Appellate Rule 7(B)).

The defendant bears the burden of producing compelling evidence that "his or her sentence has met the inappropriateness standard of review." *Tillett*, 278 N.E.3d at 366 (alteration omitted) (quoting *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)). A defendant "need not 'necessarily *prove*'" that the sentence is inappropriate based on *both* the nature of his offense *and* his character, *Lane*, 232 N.E.3d at 126 (emphasis in original) (quoting *Connor v. State*, 58 N.E.3d 215, 219 (Ind. Ct. App. 2016)), but "to the extent the evidence on one prong militates against relief, a claim based on the other prong must be all the stronger to justify relief," *id.* at 127 (citing *Connor*, 58 N.E.3d at 220).

A trial judge may impose any sentence within the statutory range without regard to the existence of aggravating or mitigating factors. *Anglemyer*, 868 N.E.2d at 489. When considering the nature of the offense, we start with the advisory sentence. *Brown v. State*, 10 N.E.3d 1, 4 (Ind. 2014) (citing *Anglemyer*, 868 N.E.2d at 494). Here, Hunt was convicted of and sentenced on 4 Level 5

felonies and 102 Class A misdemeanors. "A person who commits a Level 5 felony (for a crime committed after June 30, 2014) shall be imprisoned for a fixed term of between one (1) and six (6) years, with *the advisory sentence being three (3) years*." I.C. § 35-50-2-6(b) (emphasis added). On each of his four Level 5 felony convictions, the trial court sentenced Hunt to five years executed at the Indiana Department of Correction ("DOC"). "A person who commits a Class A misdemeanor shall be imprisoned for a fixed term of not more than one (1) year[.]" I.C. § 35-50-3-2. On each of his 102 Class A misdemeanor convictions, the trial court sentenced Hunt to 1 year executed at the DOC. The trial court ordered certain sentences to be served consecutively and others to be served concurrently, for a total sentence of 35 years executed at the DOC.

[44] Where, as here, the trial court deviated from the advisory sentence, one factor we consider is "whether there is anything more or less egregious about the offense committed by the defendant that makes it different from the 'typical' offense accounted for by the legislature when it set the advisory sentence." *T.A.D.W. v. State*, 51 N.E.3d 1205, 1211 (Ind. Ct. App. 2016) (quoting *Holloway v. State,* 950 N.E.2d 803, 806–07 (Ind. Ct. App. 2011)), *as amended* (May 26, 2023). We also consider whether the offense was "accompanied by restraint, regard and lack of brutality." *Konkle*, 253 N.E.3d at 1093 (quoting *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015)).

[45] Hunt argues that the nature of the offense warrants revision because he merely called A.R., did not threaten her, and she "willingly participated in conversations with" him. Appellant's Am. Br. at 55. Hunt attempts to

distinguish the circumstances in *Lane v. State*, 232 N.E.3d 119 (Ind. 2024), from those in this case. In *Lane*, the defendant, who had a history of violence against his ex-wife, violated a protective order by writing non-threatening letters to his ex-wife from the DOC. *Lane*, 232 N.E.3d at 121. The trial court sentenced the defendant to 3,000 days at the DOC for his ten convictions for invasion of privacy as Class A misdemeanors. *Id.* After considering the defendant's history of violence against his ex-wife, the Indiana Supreme Court affirmed the defendant's sentence because (1) he "continued to commit offenses even while in prison, rather than demonstrating he is becoming a productive and law-abiding citizen" and (2) "[t]he evidence suggests that he may revert to an established pattern of domestic abuse." *Id.* at 129.

[46] Here, beginning approximately two weeks after Hunt violated a no contact order and violently attacked A.R., *see Hunt*, 269 N.E.3d at 1226, Hunt repeatedly violated the no contact orders entered in both the Rape and Domestic Violence Causes by calling A.R. over 100 times from jail. The purpose of several of the calls was to influence A.R. to help him avoid consequences stemming from his offenses in the Rape Cause. This continued assertion of dominance over A.R. and her choices perpetuated the harm to A.R. Like the defendant in *Lane*, Hunt continued to commit offenses against A.R. while he was incarcerated, and his actions demonstrate an established pattern of domestic abuse. *See Lane*, 232 N.E.3d at 129.

[47] In considering the character of the offender, "we engage in a broad consideration of a defendant's qualities," *T.A.D.W.*, 51 N.E.3d at 1211 (citing

*Aslinger v. State*, 2 N.E.3d 84, 95 (Ind. Ct. App. 2014), *clarified on other grounds on reh'g*), including whether the defendant has "substantial virtuous traits or persistent examples of good character," *Konkle*, 253 N.E.3d at 1093 (quoting *Stephenson*, 29 N.E.3d at 122). "When considering a defendant's character, their criminal history is relevant." *Hancz-Barron*, 235 N.E.3d at 1249 (citing *Johnson v. State*, 986 N.E.2d 852, 857 (Ind. Ct. App. 2013)).

[48] Hunt has 21 prior convictions, including 1 conviction in the Domestic Violence Cause, and 15 convictions in the Rape Cause, *see supra* ¶ 40, all of which reflect negatively on his character. Hunt has five additional convictions for both felonies and misdemeanors starting back in 2010. Based on the nature of Hunt's offense and his history of criminal behavior, we cannot say that Hunt has produced compelling evidence demonstrating that the nature of his offense or his character renders his sentence inappropriate.

## Conclusion

[49] In sum, Hunt's 70-day period did not expire before he was brought to trial, Hunt has waived appellate review of his due process claim, the State presented sufficient evidence to support Hunt's Attempted Obstruction Convictions, the trial court did not abuse its discretion in sentencing Hunt, and Hunt's sentence is not inappropriate.

[50] Affirmed.

Tavitas, C.J., and Bradford, J., concur.

ATTORNEY FOR APPELLANT

Lisa Johnson
Brownsburg, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

George P. Sherman
Supervising Deputy Attorney General
Indianapolis, Indiana